UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————

Navigator Acquisition Corp.,

                  **Plaintiff,**

      - against -

MGID Group Holdings Limited,

                **Defendant.**

————————————————————————————

25-cv-5507 (JGK)

Memorandum
Opinion and Order

**JOHN G. KOELTL, District Judge:**

The plaintiff, Navigator Acquisition Corp. ("Navigator"), and the defendant, MGID Group Holdings Limited ("MGID"), entered into a contract providing that Navigator would acquire MGID. Navigator alleges that MGID failed to perform under the contract and brings contract and quasi-contract claims against MGID.

MGID now moves to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). In the alternative, MGID also moves to compel arbitration and to stay proceedings pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3. For the following reasons, MGID's motion to compel arbitration is **granted**.

**I.**

The following facts alleged in the Complaint ("Compl."), ECF No. 1, and the plaintiff's declarations are accepted as true for purposes of the defendant's motions.

## A.

Navigator is a Canadian corporation with its principal place of business in New York. Compl. ¶ 1. Navigator's primary business model is to acquire small firms like MGID and to list their securities on Canadian stock exchanges. Id. ¶ 6. MGID is a Maltese corporation with its principal place of business in California. Id. ¶ 2.

In July 2022, Navigator and MGID executed a letter of intent, which contemplated the formation of a holding company ("HoldCo") that would acquire and hold 100 percent of MGID's shares. Id. ¶ 7. Shortly after the parties signed the letter of intent, Navigator began preparing to organize MGID under HoldCo in Malta. Id. ¶ 8.

In March 2023, the parties executed a share purchase agreement (the "SPA"), Compl., Ex. A, ECF No. 1–1, which provided that Navigator would acquire 100 percent of MGID's issued and outstanding securities and form a new corporate entity. Id. ¶ 9. The SPA included both a choice-of-law and forum-selection provision:

> Governing Law. This Agreement will be governed by and be construed in accordance with the laws of British Columbia and the federal laws of Canada applicable therein. All disputes or claims arising out of or in connection with this Agreement, including disputes relating to its validity, breach, termination or nullity, shall be submitted to the Vienna International Arbitral Centre (VIAC) of the Austrian Federal Economic Chamber and shall be finally settled under the Rules of Arbitration (Vienna Rules) of VIAC by one or three arbitrators appointed in accordance with the said Rules. The language(s) to be used in the arbitral proceedings shall be English.

2

SPA § 18.5.[1] The SPA also provided that "[t]he Acquisition will be subject to acceptance of the TSX-V [Toronto Stock Exchange Venture Exchange], and the formal receipt acknowledgement of the British Columbia Securities Commissions …." Id. § 4.1(a).

Between October and December 2023, Navigator worked with Centurion One Capital Corp. ("Centurion"), a "specialist in Canadian microcap firms," to help list HoldCo's shares on the TSX-V. Compl. ¶ 10. In March 2024, MGID signed an advisory agreement with Centurion to help facilitate the transaction outlined in the SPA. Id. ¶ 12. Navigator also introduced MGID to the law firm Cozen O'Connor P.C. ("Cozen O'Connor") to help facilitate the transaction. Id.

In April 2024, Navigator discovered and then disclosed a "technical funding violation" regarding the SPA transaction to the Toronto Stock Exchange. Id. ¶ 15. Cozen O'Connor worked with Navigator between June and September 2024 to correct the issue and "to finalize the debt/equity conversion as required by" the Toronto Stock Exchange. Id. The Toronto Stock Exchange ultimately approved the conversion, and Navigator raised additional capital—approximately $200,000 CAD—for the transaction with MGID. Id.

According to Navigator, however, MGID began "using the technical violation as" a reason to delay the transaction. Id. ¶ 16. In Navigator's view, MGID was not sincerely concerned about the technical violation but had instead decided, at Cozen O'Connor's urging, to list its shares on another stock

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

exchange, CBOE Canada, Inc. Id. Navigator believes MGID chose to list its shares on CBOE Canada instead of completing the transaction outlined in the SPA because the former option would allow MGID to avoid the eight-percent capital-raising fee guaranteed to Navigator by the SPA. Id.

The SPA expired by its terms on December 31, 2024, and MGID informed Navigator that MGID did not wish to proceed with the transaction. Id. ¶ 17. On March 4, 2025, Navigator received a letter from MGID purporting to terminate the SPA. Id. ¶ 18; see also Compl., Ex. B, ECF No. 1–2. On March 14, 2025, MGID issued a public statement announcing that it had informed Navigator that MGID no longer intended to proceed with the transaction. Compl. ¶ 22.

## B.

According to Navigator, the transaction underlying the SPA grew out of in-person meetings in New York between Kyle Shostak, a director at Navigator, and Victor Remsha, who Navigator contends is MGID's "majority shareholder." Decl. Kyle Shostak Opp'n to Def.'s Mot. to Dismiss ("Shostak Decl.") ¶ 4, ECF No. 16–2. Navigator alleges that Remsha, who maintains an office in New York, first proposed the transaction underlying the SPA. Id. Shostak and Remsha allegedly "discussed the proposed [t]ransaction with prospective investors in New York City at the Harvard Club" on September 30, 2021, where Shostak "led [a] 'Russian Investment Forum' event." Id. ¶ 8.

Navigator further alleges that the transaction underlying the SPA was "initiated and developed through contacts and meetings in New York with Remsha"; that "substantial negotiations, diligence, and audit work relating to the [t]ransaction were conducted" from Navigator's New York office; and that Navigator's "New York-based investor outreach and credibility-building efforts, including at the Harvard Club, were undertaken in direct connection with the transaction." Id. ¶ 14.

## C.

On July 3, 2025, Navigator commenced this action and brought claims against MGID for breach of contract, unjust enrichment, and breach of the covenant of good faith and fair dealing. On October 31, 2025, MGID moved to dismiss the complaint for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). In the alternative, MGID also moved to stay this action and to compel arbitration pursuant to the arbitration clause in the SPA.

## II.

"[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (holding that courts may resolve a motion to dismiss for forum non conveniens before establishing subject-matter jurisdiction). Accordingly, courts in this district routinely "resolve a motion to compel arbitration prior to resolving a motion to dismiss for lack of personal

jurisdiction." <u>Lewis v. ANSYS, Inc.</u>, No. 19-cv-10427, 2021 WL 1199072, at *3 (S.D.N.Y. Mar. 30, 2021) (Nathan, J.) (collecting cases). And when a court "grant[s] [a d]efendant's motion to compel arbitration," it "need not address [that d]efendant's additional motions." <u>Id.</u>

The FAA provides that any "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate" and reflects the "liberal federal policy favoring arbitration agreements." <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 625 (1985).

The Court of Appeals for the Second Circuit has instructed that district courts confronted with a motion to compel "first … must determine whether the parties agreed to arbitrate," then "must determine the scope of that agreement," and finally, "if federal statutory claims are asserted, … must consider whether Congress intended those claims to be nonarbitrable." <u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 844 (2d Cir. 1987). When deciding whether to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment." <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24–25 (1983). However, "[i]f there is an issue of fact

6

as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun, 316 F.3d at 175.

"In the event the Court decides that all of the claims must be referred to arbitration, and a stay is requested, the Court must issue a stay." Lewis, 2021 WL 1199072, at *3 (citing Katz v. Cellco P'ship, 794 F.3d 341, 345 (2d Cir. 2015)).

## III.

MGID moves to compel arbitration pursuant to the arbitration clause in the SPA. That provision provides, in relevant part, that:

> All disputes or claims arising out of or in connection with this Agreement, including disputes relating to its validity, breach, termination or nullity, shall be submitted to the Vienna International Arbitral Centre (VIAC) of the Austrian Federal Economic Chamber and shall be finally settled under the Rules of Arbitration (Vienna Rules) of VIAC by one or three arbitrators appointed in accordance with the said Rules.

SPA § 18.5.

Navigator does not dispute that its claims fall within the scope of the arbitration clause. Instead, it opposes enforcement of the arbitration clause on the ground that it is purportedly unconscionable. See Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002) ("An agreement is unenforceable when it is unconscionable."). "This argument falls within the first factor a court must consider on a motion to compel: whether the parties agreed to arbitrate." Molina v. Kaleo, Inc., 363 F. Supp. 3d 344, 349 (S.D.N.Y. 2019).

Under New York law, on which both parties rely for their arguments on unconscionability, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforc[ea]ble according to its literal terms." <u>Gillman v. Chase Manhattan Bank, N.A.</u>, 534 N.E.2d 824, 828 (N.Y. 1988). "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made." <u>Id.</u>

"The procedural component asks whether a party lacked 'a meaningful choice' in deciding whether to sign the contract." <u>Molina</u>, 363 F. Supp. 3d at 349 (quoting <u>State v. Wolowitz</u>, 96 N.Y.S.2d 131, 145 (App. Div. 1983)). "The focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." <u>Gillman</u>, 534 N.E.2d at 828.

According to Navigator, the arbitration clause in the SPA is procedurally unconscionable because "[t]here was a pronounced disparity in bargaining power between" Navigator and MGID and MGID "did not meaningfully explain the practical consequences of the arbitration clause." Pl.'s Mem. Opp'n Mot. to Dismiss ("Opp'n"), 15–16, ECF No. 16. Navigator characterizes the arbitration clause as "a classic adhesion scenario." <u>Id.</u> at 16.

Navigator's procedural unconscionability argument is unpersuasive. As an initial matter, "it is settled New York law that 'a party will not be excused

8

from his failure to read and understand the contents' of a document." <u>Kutluca v. PQ New York Inc.</u>, 266 F. Supp. 3d 691, 701 (S.D.N.Y. 2017) (quoting <u>Johnson v. Thruway Speedways, Inc.</u>, 407 N.Y.S.2d 81, 83 (App. Div. 1978)). This is especially true where, as here, the parties are both sophisticated business entities that negotiated at arm's length. Navigator insists that it "was under time pressure," which "further constrain[ed] its practical ability to resist." Opp'n 15–16. But nothing in the record suggests that Navigator was limited in the time it had to review the contract before signing it. <u>Cf.</u> <u>Brennan</u>, 198 F. Supp. 2d at 383 (employer "gave the employees no more than fifteen minutes to review a sixteen-page single-spaced document").

Navigator's argument that there was a disparity in bargaining power is also unpersuasive. "[T]he overwhelming weight of authority … provides that mere inequality in bargaining power is not a sufficient basis for finding an arbitration clause unenforceable." <u>Lord v. Accenture LLP</u>, No. 21-cv-10875, 2022 WL 2703969, at *1 (S.D.N.Y. July 12, 2022). Navigator is a sophisticated business enterprise that attempted to execute a relatively complex financial transaction. This case therefore does not involve the "much more severe imbalances of power" that typically give rise to procedural unconscionability concerns. <u>Id.</u>

Navigator's failure to show that the arbitration clause was procedurally unconscionable would ordinarily end the analysis. "In rare instances of outrageously unfair contractual language," however, "substantive unconscionability alone may merit a finding of unconscionability." <u>Clinton v. Oppenheimer & Co.</u>,

824 F. Supp. 2d 476, 484 (S.D.N.Y. 2011). But Navigator has not established even garden-variety substantive unconscionability.

Substantive unconscionability exists when the terms of a contract provision are "grossly unreasonable" by favoring the party seeking to enforce the provision. Isaacs v. OCE Bus. Servs., Inc., 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013). Navigator argues that the arbitration clause "is one-sided and unfairly tilted toward" MGID because "[i]t requires disputes to be arbitrated exclusively before VIAC in Vienna, Austria, and imposes overburdensome and significant upfront costs," which would be difficult "[f]or a small, New York-based investment entity." Opp'n 16. But Navigator provides no reason to believe that arbitrating in Vienna would be any more convenient for MGID, which has its principal place of business in California. And in any event, "even agreements that 'concededly favor' the party requesting arbitration are generally upheld when the advantage is not 'grossly unreasonable.'" Clinton, 824 F. Supp. 2d at 484. Navigator does not explain how MGID's allegedly greater ability to bear the cost of arbitrating in Austria creates a "grossly unreasonable" advantage.

Finally, Navigator contends that questions of unconscionability are "inherently fact-intensive and ill-suited for summary resolution on a pre-answer motion, particularly where Defendant has submitted its own declaration." Opp'n 16–17. Navigator is correct that "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun, 316 F.3d at 175. But Navigator does not identify any genuine dispute of material fact with respect to the enforceability of the arbitration clause. Even taking

as true all of Navigator's allegations about disparities in bargaining power and MGID's failure to explain the ramifications of the arbitration clause, Navigator still fails to establish that the arbitration clause was either procedurally or substantively unconscionable.

CONCLUSION

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, MGID's motion to compel arbitration is **granted.** MGID's motions to dismiss for lack of personal jurisdiction and improper venue are **denied as moot**. The case is stayed pending the parties' arbitration. The parties are instructed to provide the Court with a status update within seven days of the termination of the arbitration.

The Clerk is respectfully instructed to close ECF No. 13.

**SO ORDERED.**

Dated:     New York, New York
           May 11, 2026

_____
John G. Koeltl
**United States District Judge**

11